# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 779 - 1-5 | **DATE** | 12/30/2003 |
| **CASE TITLE** | USA vs. LAURENCE W. CAPRIOTTI, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order re pretrial motions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | DEC 3 1 2003 date docketed | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 73 |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 03 CR 779 |
| | ) | |
| LAURENCE W. CAPRIOTTI, JACK L. | ) | |
| HARGROVE, MICHEL D. THYFAULT, | ) | |
| JAMES R. WALLWIN and GEORGE J. | ) | |
| STIMAC, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
DEC 3 1 2003

### MEMORANDUM OPINION AND ORDER

This white-collar crime case alleges a lengthy financial scheme in a lengthy indictment of 51 pages in 17 counts of mail fraud, wire fraud, conspiracy, income tax violations and false insurance company reports, as well as forfeiture allegations. That indictment has spawned numerous motions. They can be dealt with rather summarily because this is essentially an open file case.

In responding to the motions the government has grouped them, and that appears to be a reasonable approach. A motion to suppress filed by defendant Hargrove is on hold and another motion was preciously granted. We turn to the other motions.

Defendant Hargrove has moved to adopt the "applicable" motions of his co-defendants and defendant Capriotti has moved to adopt Hargrove's motions. They are denied as unnecessary. The rulings on the substantive motions will govern the proceedings, whether or not a particular defendant initiated the motion. Hargrove has also moved for leave to file additional motions if necessary. That open-ended motion is denied. If any defendant believes

it necessary to file additional motions because of the way the case has developed we are prepared then to entertain a motion for leave.

Hargrove and Thyfault have filed various scheduling motions, and the government agrees with the concept although not necessarily the timing or extent. The first is a Santiago proffer. Hargrove asks for 90 days prior to trial. The government counters with four weeks. We think six weeks is ample, with a recognition that subsequent trial preparation may require the government to slightly amend or amplify its proffer. The defendants should file any objections 14 days prior to trial.

The government previously proposed to give notice of any proposed Rule 404(b) evidence 30 days before trial. Hargrove has asked for 90 days; the government now counters with eight weeks. We think eight weeks is ample. The government also asks that any objections be filed four weeks before trial. We say three weeks, as that will provide enough time for any briefing and rulings.

Hargrove moves the production of Jencks Act material 90 days before trial. We cannot order early production, although we can (and do) urge that it be done . The government agrees to produce all witness statements and interview summaries eight weeks prior to trial, and that satisfies Hargrove. Defendants should, likewise, produce such material prior to trial. The government suggests two weeks prior to trial, and that is reasonable.

Hargrove and Thyfault move for the production of all Brady/Giglio material 90 days before trial (Hargrove), or immediately (Thyfault). The government represents that it has already disclosed all Brady material of which it is aware and that it will promptly produce any Grady material that may subsequently turn up. It also suggests eight weeks prior to trial for

Giglio material, which Hargrove believes is too short, as, he contends, he has a right to it now, but Thyfault does not object to that. We think eight weeks makes sense, as Giglio material will correlate with the Jencks Act material, which will also be produced eight weeks prior to trial.

Thyfault and Hargrove both move for the production of expert witness materials pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E). The government recognizes its obligation and suggests eight weeks before trial. Hargrove wants them now, in order to facilitate his obtaining his own experts. We see no reason to delay production once they have been prepared, but the government may well not have those materials now. They should be produced promptly after they are prepared, and not later than eight weeks prior to trial. Conversely, defendants shall produce expert witness materials promptly after they have been prepared and not later than five weeks before trial, and they shall file any objections to proposed expert testimony by four weeks before trial, with the government responding within ten days and defendants replying seven days thereafter.

The government agrees to Hargrove's motion for the production of summary charts and Hargrove agrees to the production being six weeks before trial and recognizes that there may thereafter be some fine-tuning. Conversely, the defendants shall produce any such summary charts two weeks before trial, and the filing of any objections to the government summaries shall follow the same schedule as objections to the government's proposed expert testimony.

Hargrove moves for an order directing the government to identify its trial exhibits 60 days before trial. The government agrees to produce them four weeks in advance, provided that defendants identify theirs (both cross-examination and defense-in-chief) two weeks before

trial. Both the government and Hargrove understand that such a list is not cast in stone –

there will inevitably be some additions and deletions as the trial date approaches. The

government's schedule is based upon the fact (and it is a fact) that trial preparation is a

dynamic process. The government shall identify those trial exhibits six weeks prior to trial

that it has then determined to be trial exhibits, with a supplemental identification two weeks

later. The defendants shall identify theirs two weeks prior to trial. Neither the government

nor the defendants have an obligation to identify, prior to trial, exhibits to be used solely for

cross-examination.

Both Thyfault and Hargrove move for production of witness lists. They rest on notions

of fundamental fairness in light of the number of possible witnessers and the probable length

and complexity of the trial. The government objects, and technically it is correct. It

recognizes, however, that both sides need to know, if possible, in advance, what witnesses will

testify in order to prepare adequately for their interrogation. It therefore agrees to provide

such a list of prospective witnesses "at a reasonable time shortly before trial" provided the

defendants do the same prior to their case-in-chief. We think a reasonable time is ten days

before trial for the government and seven days for defendants before the defense is likely to

commence. And each side should notify the other of the order in which they expect the

witnesses will testify, two days in advance of their testimony.

Thyfault moves for an order directing the government to produce to him, or to

submit to this court for *in camera* inspection, all grand jury testimony and the history of the

grand jury's deliberations. The government objects. That motion is denied. Disclosure of

grand jury materials requires a showing of a particularized need. None has been shown. That

something may turn up is not enough, and the length of time the scheme was alleged to cover adds little. Defendant will have Jencks Act material well before trial, which will give him the grand jury testimony of the prospective government witnesses.

Thyfault also moves for an order permitting him access to any electronic recordings used in the investigation of this case not previously provided. The government represents there are none. Accordingly, the motion is denied as moot. Another Thyfault motion seeks Fed.R.Crim.P. 16 production. The government responds that it has complied with its Rule 16 obligations and will continue to do so, although it notes that the movant's characterization of those obligations is overly broad. Thyfault does not take issue with that response. The motion is denied as moot.

Thyfault moves for an order directing the government to disclose its analysis of the Sentencing Guidelines. While vigorously objecting, the government has indicated that it is willing to disclose what it currently believes the applicable guideline range to be, although other information may turn up. That is the most defendant can seek; neither the government nor the court is bound by that present analysis. Moreover, any contention based upon the possibility that the government may move for an upward departure at sentencing is premature. There has not been any trial yet, much less a conviction. The motion is denied as moot.

Both Hargrove and Thyfault move for a bill of particulars. Those motions are denied. While the defendants could possibly benefit from some additional detail in their defense preparation, they are going to be provided with trial exhibits, expert reports, summary charts, a Santiago proffer, a witness list, and Jencks Act material well before trial, and they have

already been provided Rule 16 disclosures. If, closer to trial, they believe they are still unable to determine what is meant by certain allegations, they can renew their motions.

They have also moved to strike certain allegations as surplusage. We deny the motions. In many instances the words and phrases are characterizations of what the government will seek to prove. They are words and phrases the defendants can expect to hear in the government's opening statement and closing argument. As the jury will be instructed, neither the indictment nor the attorneys' arguments are evidence, and the government's burden will be detailed in the instructions. We would strike irrelevant language that is prejudicial and inflammatory, but none of it is. Thyfault is also concerned about the use of "others" or "defendants" in various allegations, contending that the jury might believe him to be implicated in certain conduct when he was not and the government is not arguing that he was. Again, the indictment is not evidence; it charges Thyfault explicitly when the government contends he was involved; the questioned allegations do not, read carefully, implicate him; and we have no doubt that the government will make clear to the jury what it contends Thyfault's role was and was not.

Hargrove's motion to dismiss or strike the mail fraud counts is denied. He contends that the statute itself must provide "fair warning" of prohibited conduct rather than subsequent judicial interpretation. The Seventh Circuit disagrees. United States v. Hausmann, 345 F.3d 952, 958 (7th Cir. 2003). And the conduct alleged fits very comfortably within the judicial gloss of what are not "honest services." Further, even the dissent in United States v. Brumley, 116 F.3d 728, 740-741 (5th Cir. 1997)(en banc), relied upon by movant, recognizes that victims of the nature alleged here are within the rational definition of

"another." *And see* <u>United States v. Warner</u>, 2003 WL 22697289, *13 (N.D.Ill.).

Finally, Hargrove moves for an order precluding the admission at trial of co-defendants' out-of-court statements or, in the alternative, for severance. Such statements may well trigger <u>Bruton</u> concerns, but definitive rulings are premature because we do not know what statements the government may seek to use or for what purpose. The government proposes the disclosure of unprotected statements it will seek to use eight weeks before trial (with, presumably, any appropriate redactions), and defendant would have four weeks to object. This is a reasonable approach. Proffer-protected statements will have to be dealt with at trial. In either event, the government is directed not to refer to such statements at trial unless it has sought and obtained a judicial ruling permitting it to do so. This motion is entered and continued.

JAMES B. MORAN
Senior Judge, U. S. District Court

Dec. 30 , 2003.