# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 CR 779 |
| ) | |
| MICHEL THYFAULT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Michel Thyfault has filed a motion ("Motion") to dismiss the Second Superseding Indictment due to a purported violation of the Speedy Trial Act ("Act"). For the following reasons, the Court grants in part and denies in part Defendant's Motion and dismisses the Second Superseding Indictment without prejudice.

## LEGAL STANDARD

The Act provides, in part:

> If the defendant is to be tried upon an indictment . . . dismissed by a trial court and reinstated following an appeal, the trial shall commence within seventy days from the date the action occasioning the trial becomes final, except that the court retrying the case may extend the period for trial not to exceed one hundred and eighty days from the date the action occasioning the trial becomes final if the unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.

18 U.S.C. § 3161(d)(2). Under 18 U.S.C. § 3162(a)(2), the indictment "shall" be dismissed if a defendant is not brought to trial within Section 3161's time limits. *Id.*

In determining whether to dismiss the case with or without prejudice, a court shall consider, among others, each of the following factors: the seriousness of the

offense, the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

*Id.*

## FACTUAL BACKGROUND

On August 12, 2003, a grand jury returned an indictment against Defendant Thyfault and others, charging Defendant with one count of conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 371 and four counts of committing mail fraud in violation of 18 U.S.C. § 1341. (R. 1, Indictment.) On November 4, 2004, a grand jury returned a superseding indictment against Defendant and others, again charging Defendant Thyfault with one count of conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 371 and four counts of committing mail fraud in violation of 18 U.S.C. § 1341. (R. 117, Superseding Indictment.) At the conclusion of a six-week trial before Judge Moran, on September 15, 2005, a jury acquitted Defendant of the conspiracy charge and failed to reach a unanimous verdict on the four mail-fraud counts. (R. 220, 9/15/05 Minute Order.)

On February 27, 2007, Judge Moran dismissed without prejudice the four mail-fraud counts based on a violation of the Act. (R. 307, 2/27/07 Minute Order; R. 308, 2/27/07 Order.) A grand jury then returned a Second Superseding Indictment on March 13, 2007, charging Defendant Thyfault with four counts of mail fraud in violation of 18 U.S.C. § 1341 based on the same underlying conduct that the first superseding indictment had alleged. (R. 309, Second Superseding Indictment.) Judge Moran dismissed the Second Superseding Indictment on issue preclusion grounds on June 27, 2007. (R. 338, 6/27/07 Minute Order; R. 339, 6/27/07 Mem. Op. & Order; R. 340, 6/29/07 Minute Order.)

2

After the government appealed, on August 26, 2009, the Seventh Circuit reversed the judgment dismissing the mail-fraud counts. (R. 436, Opinion.) By that time, the district court judge assigned to this case unfortunately had passed away. The Seventh Circuit issued the mandate on September 17, 2009, but the Clerk's Office did not immediately assign a new judge to handle the case. (R. 437, Mandate.) According to the government, at some point between December 9, 2009, and January 7, 2010, it inquired into the status of the case with the District Court Clerk's Office and was told that the case would be reassigned to a new judge. (R. 458, Gov't's Resp. Br. at 5.) On January 7, 2010, one hundred twelve days after the Seventh Circuit had issued the mandate and forty-two days beyond the Act's seventy-day time constraint, the case was reassigned to this Court. (R. 443.) Defense counsel asked for a short delay of the initial appearance before this Court, and when the parties appeared for the January 21, 2010, status hearing, the parties brought to the Court's attention that there may have been a violation of the Act. Defendant subsequently filed his Motion.

## ANALYSIS

Defendant Thyfault argues that the Court should dismiss with prejudice the Second Superseding Indictment because the trial was not held within seventy days of the Seventh Circuit's issuance of the mandate. The government does not object to dismissal of the Second Superseding Indictment, but it asks that the Court do so without prejudice. Because the government does not oppose dismissal, the Court will only address whether to dismiss the Second Superseding Indictment with or without prejudice.

The Act "comprehensively regulates the time within which a trial must begin." *Zedner v. United States*, 547 U.S. 489, 500, 126 S.Ct. 1976, 1985 (2006). Its purpose is "to preserve the

3

defendant's right to a speedy trial, as guaranteed by Amendment VI of the Constitution, *and* 'to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment.'" *United States v. Napadow*, 596 F.3d 398, 402 (7th Cir. 2010) (quoting *Zedner*, 547 U.S. at 501, 126 S.Ct. 1976, with emphasis in original); *see also United States v. Taylor*, 487 U.S. 326, 340, 108 S.Ct. 2421 (1988) (noting that "'inordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends'" (quoting *Barker v. Wingo*, 407 U.S. 514, 537, 92 S.Ct. 2182, 2195 (1972) (White, J., concurring))).

> To promote compliance with its requirements, the Act contains enforcement and sanctions provisions. If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice.

*Zedner*, 547 U.S. at 499, 126 S.Ct. at 1984 (quoting 18 U.S.C. § 3162(a)(2)); *see also United States v. Killingsworth*, 507 F.3d 1087, 1090 (7th Cir. 2007). In making the dismissal-with-or-without-prejudice determination, courts must consider, among other things, "(i) the seriousness of the offense, (ii) the facts and circumstances which led to the dismissal, and (iii) the impact of reprosecution on the administration of the [Act] and on the administration of justice."[1] *United*

---

[1] Congress's dismissal-with-or-without-prejudice formula

is designed to promote compliance with the Act without needlessly subverting important criminal prosecutions. The more severe sanction (dismissal with prejudice) is available for use where appropriate, and the knowledge that a

4

*States v. Smith*, 576 F.3d 681, 689 (7th Cir. 2009) (citing 18 U.S.C. § 3162(a)(2); *Taylor*, 487 U.S. at 333, 108 S.Ct. 2413). According to the Act's legislative history – and consistent with its plain language – courts should not prioritize either dismissal with prejudice or dismissal without prejudice. *Taylor*, 487 U.S. at 335, 108 S.Ct. at 2418. In carefully assessing this case, all of the Section 3162(a)(2) factors support dismissal without prejudice.

**I.    Seriousness of the Offense**

Defendant Thyfault argues that "this case involved a significant amount of money, but it did not involve drugs, firearms, or violence of any sort," and that the mail-fraud charges "are limited by the jury's acquittal of him on the conspiracy charge." (R. 456, Def.'s Mot. at 12.) First, that the jury in the earlier trial was unable to reach a unanimous verdict does not diminish the seriousness of the charges. Second, regardless of whether Defendant's alleged crimes involved drugs, firearms, or violence, they are nonetheless serious. As the Seventh Circuit observed when a mail-fraud conviction carried a maximum sentence of five years, "[t]here can be no doubt that mail fraud is a serious offense." *United States v. Coonce*, 961 F.2d 1268, 1282 (7th Cir. 1992); *see also United States v. Schmuck*, 776 F.2d 1368, 1371 (7th Cir. 1985), *vacated on other grounds*, 784 F.2d 846 ("Congress has deemed fraud that is perpetrated through the mails to be an especially serious offense, punishable as a felony by as much as five years in jail for each mailing."). That statement is no less true now that the statutory-maximum sentence is

---

> violation could potentially result in the imposition of this sanction gives the prosecution a powerful incentive to be careful about compliance. The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws-though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance.

*Zedner*, 547 U.S. at 499, 126 S.Ct. at 1984-85.

twenty years.

Furthermore, the scheme in which Defendant allegedly engaged is not a run-of-the-mill fraud scheme. The Second Superseding Indictment alleges, rather, that Defendant's scheme lasted over ten years and resulted in the loss of approximately $90 million, over $50 million of which was stolen during Defendant's involvement. As the government correctly notes, the advisory 2009 Sentencing Guidelines allot twenty-four additional points to the guidelines calculation for a defendant involved in a fraud scheme that causes losses in excess of $50 million. *See* U.S.S.G. § 2B1.1(b)(1). Accordingly, the seriousness of the offense weighs in favor of dismissal without prejudice.

## II.     Facts and Circumstances Leading to Dismissal

With regard to the second factor, Defendant argues that (1) he "contributed nothing to [the] delay, unlike the situation in virtually every reported case wherein the dismissal is without prejudice," and (2) the delay was lengthy and serious. (R. 456, Def.'s Mot. at 12-13.) As to his first argument, there are numerous cases in which the Seventh Circuit has found dismissal without prejudice appropriate where the defendant did not contribute to the delay. *See*, *e.g.*, *Killingsworth*, 507 F.3d at 1090 (violation caused by the failure to schedule an arraignment); *United States v. Janik*, 723 F.2d 537, 546 (7th Cir. 1983) (remanding for consideration of whether a violation caused by a "clerical oversight" should result in dismissal with or without prejudice). Indeed, the Seventh Circuit has found that a "defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988) (citing *United States v. Regilio*, 669 F.2d 1169, 1172 (7th Cir. 1981)).

The remainder of Defendant's facts-and-circumstances argument fares no better. Where – as here – the charged crime is serious, "the sanction of dismissal with prejudice should only be imposed for a correspondingly serious delay." *United States v. Hawthorne*, 705 F.2d 258, 260 (7th Cir. 1983) (citing *United States v. Carreon*, 626 F.2d 528, 532 (7th Cir. 1980)). The excessive delay in this case was forty-two days. The Seventh Circuit has found dismissal without prejudice to be appropriate even when the delay was twice as long. *See United States v. Arango*, 879 F.2d 1501, 1508 (7th Cir. 1989) (violation of, at most, three months).

Additionally, the length of the delay "in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340, 108 S.Ct. at 2421 (noting that the absence of prejudice weighs in favor of dismissal without prejudice). Defendant has not argued, however, that the excessive delay has impaired his ability to prepare for trial or restricted his liberty. While Defendant argues that the mail-fraud charges stem from activities that occurred over fourteen years ago, he has not alleged that during the forty-two day excessive delay any evidence became unavailable or that witnesses had become unavailable. Even had he so alleged, however, such an argument would have less force here because Defendant went to trial in 2005, and he has that trial record with which to work. *See Smith*, 576 F.3d at 690-91.

Similarly, Defendant argues that the criminal charges have had devastating consequences on his life, including divorce, unemployment, and financial difficulties. He has not connected those consequences, however, to the violation of the Act. In addition, Defendant is not detained and has not had any bond conditions imposed on him during the forty-two-day time period. *See*

7

*Killingsworth*, 507 F.3d at 1091 (reversing the district court's dismissal with prejudice due to a violation of the Act, even where the defendant was detained during the violation period); *Carreon*, 626 F.2d at 533 n.9; *United States v. Johnson*, 29 F.3d 940, 946 (5th Cir. 1994) (finding that the facts and circumstances of the case – which included a violation of the Act by 118 days, during which time the defendant had been detained – pointed slightly in favor of dismissal without prejudice). Ultimately, Defendant "has failed to demonstrate actual prejudice from the delay; he has not demonstrated how the delay affected his ability to defend himself or substantially impair[ed] any of his 'intangible rights.'" *Arango*, 879 F.2d at 1508.

Further, the violation of the Act here was inadvertent. *See Taylor*, 487 U.S. at 339, 108 S.Ct. at 2421 (noting the absence of bad faith or a pattern of neglect on the part of the government); *Fountain*, 840 F.2d at 512; *Carreon*, 626 F.2d at 533 n.9. Dismissal with prejudice would therefore not discourage the government from engaging in bad faith. *See Arango*, 879 F.2d at 1508. Just as in *Killingsworth*, "the absence of bad faith by the government and the lack of prejudice to the defendant nudge this factor in favor of dismissal without prejudice." 507 F.3d at 1091.

Defendant's reliance on *United States v. Ramirez*, 973 F.2d 36 (1st Cir. 1992), does not change this conclusion. In that non-binding case, the court dismissed an indictment with prejudice because of a violation of the Act that occurred due to the "administrative oversight" of taking pretrial motions under advisement for a prolonged period of time. *Id.* at 39. In doing so, however, the court emphasized that such an oversight could happen in any case, thus requiring a deterrent. *Id.* at 38-39. Here, there is minimal risk of repetition. First, there is little chance that these unique facts – waiting for a case to be reassigned after appeal due to a judge's passing –

will repeat themselves. Second, the Court has alerted the appropriate court personnel of this situation in order to avoid such an oversight in the future. Dismissal without prejudice is commensurate with the magnitude of the violation and the facts of the case. *See United States v. Loera*, 565 F.3d 406, 411 (7th Cir. 2009).

### III. Impact of Reprosecution on the Administration of the Act and of Justice

Finally, Defendant argues that reprosecution would be an affront to the administration of the Act and the administration of justice due to the age of the alleged crimes and because "[i]t is hard to imagine that the purposes of the Act do not encompass this situation and require dismissal with prejudice." (R. 456, Def.'s Mot. at 14.) As explained above, however, Defendant has not argued that the violation of the Act prejudiced his ability to prepare for trial, and he does not address the Act's purpose of protecting society's interests. As the Seventh Circuit has explained, "[t]he 'penalty' imposed on the prosecutor (and the rest of society) by dismissing with prejudice rises with the seriousness of the crime." *Fountain*, 840 F.2d at 512.

The Act also seeks to avoid unduly impairing the enforcement of federal criminal laws by allowing for dismissal without prejudice in appropriate cases. *See Zedner*, 547 U.S. at 499, 126 S.Ct. at 1984-85. As the Supreme Court has stated,

> the Act does not require dismissal with prejudice for every violation. Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely. If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.

*Taylor*, 487 U.S. at 342, 108 S.Ct. at 2422; *see also Janik*, 723 F.2d at 546 (noting that dismissal

9

without prejudice "is not a completely negligible sanction, viewed from a deterrent standpoint, since the grand jury may refuse to reindict and since even if it does the defendant may be acquitted"). Dismissing the indictment without prejudice therefore imposes an additional burden on the government, and it will not undermine the administration of the Act or of justice.

A violation of the Act, without more, does not mandate dismissal with prejudice. Dismissal without prejudice is appropriate where – as here – Defendant has been accused of a serious crime, he has not been prejudiced, the government has not acted in bad faith, and the circumstances leading to the violation of the Act are unlikely to recur. *See Killingsworth*, 507 F.3d at 1091. Under such circumstances, "'the purpose of the Act would not be served by requiring the court to impose the maximum sanction for a minimum violation.'" *Id.* (quoting *Hawthorne*, 705 F.2d at 261); *see also Carreon*, 626 F.2d at 533 (concluding that "the adverse impact of reprosecution on the administration of justice and the [Act] would be slight. [The defendant] claimed no prejudice due to the delay, the government did not intentionally seek delay, and the unusual circumstances of the case would be unlikely to recur, thus causing the sanctioning of similar delays in the future.").

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant Thyfault's Motion to Dismiss. The Second Superseding Indictment is dismissed without prejudice.

Dated: May 20, 2010                     ENTERED:

                                        _____
                                        AMY J. ST. EVE
                                        United States District Court Judge